ELIAS KORN

v.

JEAN GOLDFARB KORN, Appellant

No. 16,881

United States Court of Appeals

Third Circuit

Argued February 1, 1968

Filed June 28, 1968

*See, also, 398 F.2d 689*

BERNARD L. SEGAL, ESQ., Philadelphia, Pennsylvania, U.S.A. *for appellant*

WILLIAM W. BAILEY, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before KALODNER, STALEY and SEITZ, *Circuit Judges*

KALODNER, *Circuit Judge*

## OPINION OF THE COURT

The plaintiff, Elias Korn, filed a complaint against his wife, the defendant, Jean Goldfarb Korn, in the District Court of the Virgin Islands, seeking an absolute divorce on the ground of incompatibility of temperament.[1] The defendant filed an answer and counterclaim in which she sought the dismissal of the plaintiff's complaint on the ground of lack of jurisdiction; denied the substantive allegations of the complaint; and requested an order granting her support and costs, including reasonable attorney's fees.

The District Court, to which the case was tried, granted plaintiff an absolute divorce on the grounds of incompatibility of temperament and this appeal followed.

Defendant here challenges the District Court's finding that when the plaintiff commenced his action he "was an inhabitant of the Virgin Islands and was domiciled therein", and its ruling that jurisdiction existed for that reason

---

[1] Incompatibility of temperament is one of the grounds of divorce listed in Title 16, § 104 of the Virgin Islands Code.

under the provisions of the Virgin Islands Code.[2] She also challenges the District Court's finding as to incompatibility of temperament.

These "background" facts are established by the record:

Plaintiff is an osteopathic physician who practiced his profession in Philadelphia, Pennsylvania, for some thirty-one years prior to his arrival in St. Thomas, Virgin Islands in 1966; he married the defendant in Philadelphia on September 24, 1961, and they lived there together until their separation in mid-1963; defendant subsequently instituted an action for support against plaintiff in the County Court of Philadelphia which plaintiff unsuccessfully opposed, Korn v. Korn, 204 Pa. Super. Ct. 153, 203 A.2d 341 (1964); in the summer of 1963 plaintiff rented an apartment in Camden County, New Jersey and in 1965 he instituted a divorce action against defendant in the Superior Court of Camden County which he discontinued, after a hearing but prior to a decision, in November, 1966, subsequent to his arrival in St. Thomas on October 2, 1966; plaintiff continued to practice his profession in Philadelphia during the period of his residence in New Jersey; he instituted the instant action on December 14, 1966, some nine weeks after his arrival in St. Thomas.

In seeking to establish the fact that he was "domiciled" in the Virgin Islands when he commenced his divorce action, plaintiff testified on direct examination as follows: he had closed his medical practice and "cut" all his business connections in Philadelphia; he had come to the Virgin Islands with the intention to make the Islands his "permanent residence and domicile" and "with the idea of making a new life, starting a practice in the Virgin

---

[2] 16 V.I.C. § 106 requires that the plaintiff in a divorce action "must be an inhabitant of the Virgin Islands who is domiciled therein at the commencement of the action", and "in this respect the statute follows a basic requirement for jurisdiction in a divorce action". Sachs v. Sachs, 265 F.2d 31, 33 (3 Cir. 1959).

Islands"; he had "made application to be admitted to practice", in the Virgin Islands, and had discussed the "matter" with Dr. Roy A. Anduze, Commissioner of Health of the Virgin Islands, who had advised him to contact Dr. Benjamin Nath, Secretary of the Board of Medical Examiners; he did so and "had to fill out certain forms" in order to take a required examination for admission to practice; he had not yet taken the examination but it was his intention to do so and he had spent his time since arriving in the Islands studying "and making outlines" in preparation for the examination; on his arrival in the Virgin Islands he stayed for about a month at the Pineapple Beach Club in St. Thomas; he thereafter rented a house in St. Thomas for about two months; he then returned to the Pineapple Beach Club for a few weeks, after which he moved to the Yacht Haven Hotel in the beginning of February, 1967 "where I have been staying ever since".

In "corroboration" of his "domicile" in the Virgin Islands, plaintiff introduced in evidence a "Notice of Payment Due" from the Blue Cross of Greater Philadelphia for health insurance premiums for the period March 1, 1967 to June 1, 1967, listing his address as the Pineapple Beach Club, and a copy of his federal income tax return for 1966 in which he had listed his address as the Yacht Haven Hotel.

Plaintiff, on cross-examination, admitted that he had not at the time of trial—some nine months after his arrival at St. Thomas—filed an application to take the required examination to practice his profession in the Virgin Islands, although he had testified to the contrary on direct examination. With reference to his testimony on direct examination that he had "studied" in preparation for the licensing examination and made 50 to 100 "outlines" of materials, he was unable to produce such "outlines" and

he admitted on cross-examination that he had no medical books in the Islands and had "studied" only from "between five and twenty" medical journals.

Further, in contradiction of his testimony on direct examination that he had resided at the Yacht Haven Hotel continuously since he had registered there in early February, 1967, plaintiff admitted on cross-examination that he had not done so and had in fact made an unspecified number of trips to Philadelphia and New York between early February and the time of his trial on June 7 and 8 and July 14, 1967; plaintiff said that he had made three or fours trips to New York and five or six trips to Philadelphia between the time of his arrival in St. Thomas on October 2, 1966 and the time of his trial. The trips, plaintiff said, were made for social and family visits, and they were financed with borrowed funds, since he had no assets and had not had any income subsequent to his arrival in the Islands.

In her defense testimony, defendant introduced records of the Yacht Haven Hotel which disclosed that plaintiff had registered there on February 6, 1967 listing his address at the time as "Philadelphia". The Yacht Haven Hotel records further disclosed that plaintiff had checked out on April 16th, checked in again on May 2d and checked out on May 14th; checked in again on May 30th and checked out on June 9th; checked in again on June 21st and checked out on June 24th.

It may be noted that defendant also introduced into evidence a letter from Dr. Anduze dated April 4, 1967 which was in reply to plaintiff's letter of March 8, 1967 regarding licensure in the Virgin Islands, and a letter which plaintiff wrote to Dr. Nath on April 7, 1967 requesting ". . . any pertinent information—or forms—regarding medical licensure in the Virgin Islands".

On the record recited, the District Court made the fact-finding that plaintiff was "domiciled" in the Virgin Islands when he started his divorce action without specification as to the basis of that finding.

On our review of the entire evidence we are "left with the definite and firm conviction that a mistake has been committed"[3] in the District Court's fact-finding that plaintiff was "domiciled" in the Virgin Islands when he commenced his divorce action, and that the finding was "clearly erroneous", and must be reversed for that reason.

The distilled essence of settled principles applicable here may be epitomized as follows:

■ One's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words.[4]

---

[3] United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

[4] "One's testimony with regard to his intention [to make a particular place his domicile] is, of course, to be given full and fair consideration, but it is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts". District of Columbia v. Murphy, 314 U.S. 441, 456 (1941).

 \* \* \*

"While one's statements may supply evidence of the intention requisite to establish domicile at a given place of residence, they cannot supply the fact of residence there; . . . and they are of slight weight when they conflict with the fact. . . . [T]he actual fact as to the place of residence and . . . [one's] real attitude and intention with respect to it as disclosed by his entire course of conduct are the controlling factors in ascertaining his place of domicile." Texas v. Florida, 306 U.S. 398, 425 (1939).

 \* \* \*

"What is in another man's mind must be determined *by what he does as well as by what he says.* . . .

"Residence in fact, and the intention of making the place of residence one's home, are essential elements of domicile. Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and *a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling*

In the instant case, plaintiff's "entire course of conduct" before and after his arrival at St. Thomas, contradicts and negates his self-serving declarations that he came there "with the idea of making a new life, starting a practice in the Virgin Islands", and making the Islands his "permanent residence and domicile".

This "entire course of conduct", evidenced by the record, may be high-lighted as follows:

Plaintiff, age 53, practiced osteopathic medicine in Philadelphia, Pennsylvania for 31 years prior to coming to St. Thomas; in 1958 he was convicted in Philadelphia of the crime of performing an illegal abortion; he married defendant in 1961; they separated in 1963; she successfully prosecuted an action for support against plaintiff in 1964 in a Philadelphia court; during the pendency of the support action, plaintiff, in 1963, while continuing his practice in Philadelphia, sought to establish a residence in New Jersey by renting an apartment in that state, and in 1965 sued defendant for divorce in a New Jersey court; after a hearing in his divorce action, but before a decision was handed down with respect thereto, he came to St. Thomas on October 2, 1966; he discontinued his New Jersey divorce

---

*factors in ascertaining his domicile."* Stine v. Moore, 213 F.2d 446, 448 (5 Cir. 1954), (emphasis supplied).

\* \* \*

[W]here the surrounding facts and circumstances clearly indicate otherwise, an individual cannot establish a domicile in a particular State merely by declaring that he regards this State as his domicile". Spencer v. Woody, 212 F.2d 668, 669 (4 Cir. 1954).

\* \* \*

"A domicile once acquired is presumed to continue until it is shown to have been changed. . . . Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. . . . To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains. . . ." Mitchell v. United States, 88 U.S. 350, 353 (1875).

action in November, 1966, and instituted the instant divorce action on December 14, 1966 (nine weeks after his arrival at St. Thomas); prior to coming to the Virgin Islands to "make a new life" and start a "practice" there, he made no attempt to ascertain the requirements for admission to practice his profession from the Virgin Islands Board of Medical Examiners or anyone else; he did not make any attempt to ascertain the stated requirements until March 8, 1967—five months after he arrived at St. Thomas; contrary to his testimony on direct examination that he had "made application to be admitted to practice" in the Islands prior to June, 1967 when his divorce action came to trial, he admitted on cross-examination that he had never made such an application; he had confined his preparation for the never-applied-for licensing examination to making "50 to 100 outlines" from several medical journals because he had no medical books; he was unable to produce any of the "outlines" because he had "memorized" and destroyed them; the "Requirements for Medical Licensure in the Virgin Islands" specify that an applicant for a license to practice medicine must satisfy the Board of Examiners that he is "of good moral character" and that the applicant file "at least two letters of favorable character testimony"; plaintiff had made no effort to secure employment in the Islands although he had no assets and no income and was living on borrowed funds; he made no attempt to establish a permanent home in the Islands from the time of his arrival to the date of the trial of his divorce action and during that time he made between eight to ten trips to the United States, he "checked out" from his hotels at frequent intervals during the period covered by these trips to the United States; he "checked out" from his hotels on February 6, 1967—four months after his arrival at St. Thomas—he listed his address as "Philadelphia, Pa."; and

303

he continued to maintain his health insurance in the Blue Cross of Greater Philadelphia and directed the latter to mail his "Notice of Payment Due" for the period March 1, 1967 to June 1, 1967 to St. Thomas because "I knew that I was going to be here and *probably stay here*". (emphasis supplied)

■ The recited evidence as to plaintiff's course of conduct discloses a pattern of forum shopping in his quest for a divorce—first in New Jersey and then in the Virgin Islands—following failure of his efforts to defeat defendant's proceedings for support in the Pennsylvania courts, and it makes inescapable the conclusion that he did not, as he testified, come to the Islands "with the idea of making a new life, starting a practice in the Virgin Islands" and making the Islands his "permanent residence and domicile".

As our late brother Goodrich stated in his admirable "Goodrich, Conflict of Laws, § 29, pages 67–68 (3 ed. 1949), ". . . [M]otive may be very important in deciding as a fact whether the alleged intention [to establish a domicile] was genuine . . . [it] may lead, or help lead, the trier of the fact to conclude that there really was not a change of domicile at all, but the appearance of a change made for the purpose of securing some personal advantage. This effect of motive has been recognized by the courts. Thus, many divorce decrees coming from states or countries where divorces are easily obtained . . . have been denied recognition on this basis."

Of critical significance here in evaluating plaintiff's testimony that he had come to the Islands to start "a practice" is his initial failure to make any preliminary inquiry before coming there, as to the eligibility requirements of the Islands' medical licensing program, and his further failures (1) to ascertain such requirements until five months after he had arrived at St. Thomas, and (2) to file an application to take the required licensing examination.

On the score of the latter, it may be recalled that his credibility as a witness was impaired when he admitted on cross-examination that he had not applied to take the stated examination in contradiction of his testimony on direct examination that he had done so.

For the reasons stated, the Judgment will be reversed and the cause remanded to the District Court with directions to dismiss plaintiff's Complaint for lack of jurisdiction and to award defendant her costs, and reasonable counsel fees.