UNITED STATES of America, Plaintiff,

v.

**William J. SCOTT, Defendant.**

**No. 79 CR 236.**

United States District Court,
N. D. Illinois, E. D.

June 18, 1979.

---

Thomas P. Sullivan, U. S. Atty., Jeremy D. Margolis, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

William A. Barnett, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

The defendant is charged with making and subscribing personal income tax returns

for the years 1972 through 1975, which he did not believe to be true and correct as to every material matter.[1] Before the Court at this time is defendant's motion pursuant to 18 U.S.C. § 3237(b), to transfer this case to the Central District of Illinois at Springfield.[2]

Section 3237(b) provides:

*(b) Notwithstanding subsection (a), where an offense is described in section 7203 of the Internal Revenue Code of 1954, or where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of such Code (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: Provided, That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.*

Transfer under that provision is not subject to the discretion of the court. S.Rep. No. 1952, 85th Cong. 2d Sess. 2, *reprinted in* [1958] U.S.Code Cong. & Admin.News, p.

3261, 3262. *See also United States v. Youse,* 387 F.Supp. 132, 134 (E.D.Wis., 1975); *United States v. Rosenstein,* 303 F.Supp. 210, 212 (S.D.N.Y., 1969); *United States v. Rosenberg,* 226 F.Supp. 199, 200 (S.D.Fla., 1964).

However, a defendant requesting transfer must comply with the prerequisites enumerated in the statute, which require that the offense involve the use of the mails, be described in section 7201 or 7206(1), (2), or (5) of the Internal Revenue Code of 1954, the prosecution commence in a district other than the judicial district in which the defendant resides, the defendant must have resided in a district other than that of prosecution when the offenses were alleged to have been committed, and the motion must be filed within twenty days of the arraignment.[3] *United States v. DeMarco,* 394 F.Supp. 611, 613 (D.D.C., 1975).

Defendant's major contention involves the requirement that the prosecution be commenced in a district other than that of his residence, claiming that he is entitled to transfer to the Central District at Springfield because he maintains his domicile in that district.[4] The Government responds that the phrase "in which the defendant resides" does not mean domicile in the strict definition of that term. Alternatively, the Government argues that even if the statute contemplates equating residence with domi-

1. 26 U.S.C. § 7206(1).

2. Alternatively, defendant has requested transfer under Fed.R.Crim.Proc. 21(b). Rule 21(b) provides:

   *For the convenience of parties and witnesses, and in the interests of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.*

   It is clear, for the reasons stated in denying defendant's motion under 18 U.S.C. § 3237(b), that the Court should not exercise discretion in favor of this motion. The motion to change venue pursuant to Rule 21(b) is denied.

3. Thus, the statute speaks of two residences: (1) the defendant must currently reside in a district other than that of indictment and (2) he must have resided in a district other than that of indictment at the time the alleged offenses were committed. These two districts of residence need not be the same. However, since it is apparent that the defendant presently resides in the Northern District, he does not meet the

first residence requirement and there is no need to decide where he resided at the time the alleged offenses were committed. It is apparent, however, in view of the findings in this opinion that the defendant resided in the Northern District of Illinois during this period.

4. There is some contention as to whether or not the use of the mails requirement has been satisfied for all counts since defendant's 1975 tax return was hand delivered, and therefore, did not pass through the mails. In light of the conclusion here that compliance with another prerequisite of § 3237(b) has not been established, an examination of that issue is unnecessary. However, we note in passing that to the extent that the Government would narrowly construe the use of the mails portion of the statute to require that the return pass through the mails, its interpretation is overly restrictive. See *United States v. DeMarco,* 394 F.Supp. 611 (D.D.C., 1975); *United States v. Youse,* 387 F.Supp. 132 (E.D.Wis., 1975).

cile, the defendant is domiciled in the Northern District of Illinois, and therefore, is not entitled to transfer.

While there are numerous cases in which transfer under that section has been permitted, *e. g., United States v. DeMarco*, 394 F.Supp. 611 (D.D.C., 1975); *United States v. Youse*, 387 F.Supp. 132 (E.D.Wis., 1975); *United States v. Kimble*, 186 F.Supp. 616 (S.D.N.Y., 1960), none presents the precise question involved here. Thus, before deciding whether or not the defendant is entitled to transfer, the significance of "reside" as it appears in § 3237(b) must be resolved.

The defendant contends that for purposes of establishing venue as well as jurisdiction, the term "residence" is always equivalent to domicile. While residence has on some occasions been equated to domicile for the purposes of venue statutes, these concepts are distinctly different and are not identical, nor are they synonymous. *Unification Church v. Attorney General for the United States*, 189 U.S.App.D.C. 92, 97, 581 F.2d 870, 875 (1978); *Kahane v. Carlson*, 527 F.2d 492, 494 (2d Cir., 1975); *Arley v. United Pacific Insurance Co.*, 379 F.2d 183, 185 (9th Cir., 1967), *cert. denied*, 390 U.S. 950, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968), and nothing in *Holmes v. Board of Parole*, 541 F.2d 1243 (7th Cir., 1976), equating residence with domicile for the purposes of 28 U.S.C. § 1391(e) suggests otherwise. In *Holmes*, the court merely held that a person incarcerated in a district other than his domicile, may bring a petition for a writ of habeas corpus in the district of his domicile and conviction rather than being forced to bring the action in the district of his involuntary temporary residence.

In general, notions of convenience underlie venue provisions, *Kahane v. Carlson*, 527 F.2d 492, 494 (2d Cir., 1975), and the determination of the meaning of the term residence depends not on generalized rules, but the specific significance given to that term as it appears in a particular statute. *Unification Church v. Attorney General for the United States*, 189 U.S.App. D.C. 92, 581 F.2d 870 (1978); *Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc.*, 512 F.2d 605 (2d Cir., 1975).

Thus, in order to decide the intended meaning of "reside" in § 3237(b) factors such as the situation existing at the time of enactment which the statute was designed to cure, the plain meaning of the term considered within the context of the statute and the legislative history are relevant. *District of Columbia v. Murphy*, 314 U.S. 441, 449, 62 S.Ct. 303, 307, 86 L.Ed. 329 (1941). *See generally, Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

The enactment of § 3237(b) was predicated on a practice by the government which resulted in tax fraud and tax evasion cases being brought in a district convenient to the district director of the Internal Revenue Service, but frequently at great distances from the defendant's home.[5] Over objections of the Department of Justice, and more particularly, of the Treasury Department, Congress passed subsection (b) of § 3237.

Unfortunately, in enacting that provision, Congress failed to supply an accompanying definition that would clarify the meaning intended by the word "reside". The legislative history, however, indicates that Congress was less concerned with the formal distinction between residence and domicile than it was with the practicalities preceding the indictment, the expense and facility of preparing a defense, and the convenience to witnesses as well as the defendant.

As a consequence, while explaining the need for the enactment of subsection (b), both the Senate and House reports reflect a concern for holding trial where the majority of witnesses and documents can be found, where the defendant will not incur unneces-

---

5. *Testimony before a subcommittee of the Committee on the Judiciary revealed that under current procedures, defendants in certain tax-evasion and tax-fraud cases are often prosecuted in a judicial district substantially* *distant from the district in which they reside. This causes a heavy burden upon them which is more appropriately and more easily borne by the prosecution.* H.Rep. No. 1890, 85th Cong. 2d Sess. 2 (1958).

sary travel expenses and where his attorney's practice can continue with the least amount of interruption.

*The committee is of the opinion that too frequently prosecutions are not brought in the defendants' home districts but rather in the district most convenient to the district director of internal revenue. Often that district may be a considerable distance from the defendant's home. The cost and inconvenience to the defendant may be substantial, especially in the case of an extended trial. The additional expense to the defendant of living away from home, the problem of getting his local attorneys to leave their offices and practices for several days or weeks and the increased cost incurred thereby, the inconvenience to witnesses, these are all factors which the committee believes place a heavy burden upon the defendant which can be better borne by the Government.*

*The committee believes, further, that, in the type of case covered by this bill, the acts for which the defendant is really being tried are generally committed in the district in which he resides and certainly bear little or no relationship to the place where his tax return is received.* S.Rep. No. 1952, 85th Cong. 2d Sess. 2, *reprinted in* [1958] U.S.Code Cong. & Admin.News, pp. 3261, 3262. *See also* H.Rep. No. 1890, 85th Cong. 2d Sess. 2 (1958).

All of these factors reflect an overriding concern that a defendant is provided a convenient forum. And while it does appear that Congress contemplated that a defendant would have but one residence, the legislative history contains nothing to suggest that in determining where a defendant resided at the time of the alleged offense and where he resides at the time of the prosecution, it is incumbent on the court to inquire into his subjective intentions.

█ The circumstances surrounding this case make it clear that a trial in a district in which defendant has a residence, even assuming *arguendo* that his domicile is elsewhere, comports with Congress' intent when it enacted this statute. In short, the facts submitted establish that defendant personally resided in this district during the time of the alleged offenses and presently personally resides here, while he conducts his political activities and life-style in the Central District of Illinois.

The defendant currently maintains an apartment in the Northern District of Illinois where he resides with his wife and has lived in that apartment since at least 1974, the same year in which he applied for a United States passport under oath and gave an address in the Northern District as his "permanent residence."

The series of events which culminated in the decision to indict allegedly took place in the Northern District. The returns themselves were made, prepared and signed in Chicago. Thus, documents, records and witnesses which may either substantiate or abrogate the pending charges are located in this district.

Even if defendant's contention that he is domiciled in Springfield were true, the clear objectives of Congress to provide a convenient forum for a defendant in certain criminal tax prosecutions, would be thwarted by transferring this case to the Central District. To do so would require the transportation of numerous records and documents. Witnesses would be required to travel long distances during the course of the trial and in certain instances, incur greater expenses. Moreover, interpreting the residency requirement with greater flexibility than would be allowed if that term were equated with domicile permits the harmonious coexistence of § 3237(b) and the Constitutional venue requirements.

Article III, § 2 of the Constitution provides that "[t]he Trial of all Crimes . . shall be held in the State where the said Crimes shall have been committed . .." In addition, the Sixth Amendment expands on that notion granting a defendant the right to "a speedy and public trial, by an impartial jury of the State and district *wherein the crime shall have been committed* . . . ." (emphasis supplied).

It is evident from the legislative history that Congress was cognizant of potential Constitutional difficulties. Indeed, in response to Treasury Department objections that prosecution in a district in which defendant resided but in which no crime had been committed would offend Constitutional standards, the original bill was amended. The amendment, rather than requiring trial in the district of defendant's residence, permitted him to decide whether or not he wanted to waive those Constitutional guarantees.[6]

In this instance, it is clear that constitutional venue requirements had enough significance in Congress' decision-making to result in an amendment to the original bill. That demonstrated sensitivity to constitutional mandates indicates that Congress contemplated a statute that would provide the alternative that would be least likely to interfere with a defendant's rights. This construction of § 3237(b)'s residence provision affords a defendant the opportunity to be tried in a location with which he has some established connections while at the same time giving due deference to constitutional policies.[7] Therefore, because defendant has "resided" in the Northern District of Illinois within the meaning of § 3237(b), he has failed to establish his right to transfer under that statute.

Even if defendant were correct in his interpretation of § 3237(b), a different outcome would not be required, for while defendant vigorously maintains that he is a domiciliary of Springfield, his unguarded conduct more clearly reflects an intention to establish a permanent personal residence in Chicago. Indeed it is apparent that the defendant, not unlike many other elected officials, has two distinct personalities, one is political, the other personal. He also has established two residences, one personal in the Northern District of Illinois, and one political, in the Central District.

This case concerns a defendant who, by article V, section 1 of the Illinois Constitution of 1970, is required to "maintain a residence at the seat of government." Defendant does not argue that, by the terms of that provision, he is required to establish a permanent residence in Springfield. Rather, he contends that he chose to establish his domicile in that city.

As evidence of his intent, defendant points out that he is registered to vote and has voted in Springfield; that he is listed as a resident of Springfield in the official Illinois Blue Book, with the Attorney Registration and Disciplinary Commission, on his petition for candidacy for public office, in various "Who's Who" publications, in the

**6.** *The objections of the Treasury Department were largely predicated upon the original bill, which provided that cases encompassed by the bill* must *be tried in the district in which the defendant resided at the time of the alleged offense. The Treasury Department objected that establishing the defendant's residence at the time the alleged offense was committed as well as establishing whether a criminal act had been committed in that district would present serious difficulties. In addition, the Department raised the issue that having to bring a prosecution in the district in which the defendant resided at the time of the alleged offense, even though an unlawful act had not been committed there, would raise the constitutional question of violation of the defendant's right under article III, section 2, clause 2. and the sixth amendment, to a trial in the State and district in which the crime had been committed. The committee believes that the amended bill, which requires transfer of the trial only upon motion of the defendant, satisfies both the prosecutive and the constitutional objections*

*raised by the Treasury Department.* S.Rep. No. 1952, 85th Cong. 2d Sess. 2–3, *reprinted in,* [1958] U.S.Code Cong. & Admin.News, pp. 3261, 3262–63.

**7.** Defendant argues that by subjecting him to trial in the Northern District of Illinois, he will be deprived of his right to be tried by a jury of his peers chosen from members of his community. That argument may have some allure in certain situations in which a defendant is tried far from family and associates, including persons who can attest to his good reputation. However, those are not the facts presented here. It is undisputed that defendant has numerous and meaningful connections with the Northern District. He has lived in this district for a large portion of his life, and has, at all times, maintained a residence as well as personal and professional ties. Clearly, such attachments cannot be deemed insignificant and certainly will not result in the deprivation of his Sixth Amendment rights.

Springfield City Directory, and in the Illinois Attorney General's official book of published opinions. Defendant also relies on the fact that his membership with the Evanston Post of the American Legion bears his Springfield address and that the Internal Revenue Service sent communications to his home in Springfield and that he maintained a bank account and carried on banking transactions at the Illinois National Bank of Springfield. Moreover, defendant contends, when testifying under oath in a divorce proceeding in 1977 and again before the Grand Jury that returned this indictment, he stated that his home was in Springfield.

■ Domicile depends on the concurrence of two factors: residence and the intent to reside indefinitely in a particular place. *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1938). Because residence is easily established by mere physical presence, the more difficult task is determining whether the requisite intent to indefinitely remain in a particular location exists. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir., 1954). That is necessarily a factual determination, and the facts brought forth to substantiate it may be presented by outside materials which demonstrate more clearly than words, the elusive concept of intent. *Cf. United States v. Youse*, 387 F.Supp. 132, 134 (E.D.Wis., 1975); *United States v. Kimble*, 186 F.Supp. 616, 618 (S.D. N.Y., 1960).

■ Generally, where a person resides, whether he owns a home or pays rent, and where his family and personal belongings are located are all factors that must be evaluated in determining his intent to remain indefinitely. Also, considerations such as where he exercises his political rights, where he maintains affiliations with religious and social organizations, where he transacts business and financial matters, where he pays personal taxes, and where he obtained a driver's license are all relevant. *District of Columbia v. Murphy*, 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Texas v. Florida*, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); *Krasnov v. Dinan*, 465

F.2d 1298 (3d Cir., 1972); *Blue v. National Fuel Gas Distribution Corporation*, 437 F.Supp. 715 (W.D.Pa., 1977). Finally, while a party's declarations of where he intends to establish his permanent abode are significant, they must be weighed against any self-serving motives, and may be impeached by conduct that tends to negate his assertions. *District of Columbia v. Murphy*, 314 U.S. 441, 456, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir., 1968).

■ Defendant maintains an apartment, at his own expense, in the City of Chicago. In contrast, the apartment that is placed at his disposal in Springfield is furnished by the State of Illinois, which pays the rent and other maintenance expenses. More significant, however, is the fact that Mrs. Scott also resides at the apartment in Chicago, where she also carries on a travel agency business. While evolutions in the law may have dispelled the notion that fixed a single domicile for married persons, Restatement (Second) of Conflict of Laws § 21, Comment b (1969), the residence of a spouse and other family members is a highly persuasive indication of the place intended as a permanent home. *Broadstone Realty Corporation v. Evan*, 213 F.Supp. 261, 265 (S.D.N.Y., 1962), *aff'd*, 367 F.2d 397 (2d Cir., 1966). Moreover, as a demonstration of his personal, as distinguished from political life, the defendant has consistently maintained an abode and demonstrated intent to reside permanently in the Northern District of Illinois.

During the entire period of time relevant to this indictment and for a substantial period before, the defendant has maintained an abode in the Northern District, in Palos Heights and later in Chicago. He claimed the Palos Heights address on hotel bills, rent-a-car agreements and travelers' check purchase applications. More significantly, he claimed an address in the Northern District when dealing with governmental agencies, both in the United States and abroad. For example, he claimed to reside in the Northern District when entering Bermuda in 1973 and the State of Israel in

1975, when applying for a marriage license in California in 1974, and applying for extensions of time in which to file both his Federal and State income tax returns. His Illinois driver's license issued in 1977 reflects a Northern District address.

Further evidence that defendant considered Chicago his domicile is the submission of travel vouchers claiming reimbursement for expenses incurred during trips to Springfield. The Attorney General's travel regulations disallow travel expenses at an individual's office headquarters or place of abode. The Government submits that had defendant been domiciled in Springfield, he would not have been entitled to claim reimbursements for travel expenses. Defendant responds by claiming that constitutional officers, as is defendant, are not subject to the travel regulations.

An analysis of the Attorney General's regulations is not necessary, because the importance of the claimed reimbursements is not whether defendant was entitled to them. However, submitting travel vouchers for trips to Springfield and failing to do so for expenses incurred while on trips to Chicago is further evidence that he did not consider Springfield his permanent residence.

■ Another relevant consideration in determining intent to reside is where an individual exercises his right to vote. Defendant claims that he is registered to vote and has voted in Springfield. He argues that under Illinois law, a voter must have a "permanent abode and dwelling place" within the precinct in which he is registered, Ill.Rev.Stat. ch. 46, § 4–2, and consequently, had he not been a domiciliary of Springfield he could not have registered in that district.

*Whether or not one votes where he claims domicile is highly relevant but by no means controlling. Each state pre-*scribes *for itself the qualifications of its voters, and each has its own machinery for determining compliance with such qualifications. A vote cast without challenge and adjudication may indicate only laxity of state officials . . . . District of Columbia v. Murphy, 314 U.S. 441, 456–57, 62 S.Ct. 303, 310, 86 L.Ed. 329 (1941).*

A situation similar to that which the Supreme Court envisioned occurred in this case. While defendant's Springfield voter registration began in December of 1971, still he was listed as an active voter in Cook County as late as October, 1972. He also claimed in that registration that he had been a resident of the Springfield precinct for the past three years. While he may have been a "political" resident of Springfield since 1968 it is clear from the defendant's own conduct that he was a "personal" resident of the Northern District of Illinois during that period. During much of that period he resided with his first wife and children in Evanston.[8] His application for a United States passport in November of 1968 listed Evanston as his permanent address and he used that passport as late as July 10, 1973, to enter Bermuda and claimed an address in the Northern District of Illinois as his permanent home address. This type of official oversight is not indicative of any wrongdoing on the part of the voter. However, such errors detract from the weight which may otherwise be given to the fact that voter registration is substantial evidence of a permanent abode, and clearly demonstrate that such registration is not conclusive.

■ Although defendant maintained a bank account in Springfield, the activity in that account has been minimal.[9] In contrast, defendant established various accounts in Chicago banks, including checking, savings and investment accounts.

---

**8.** In the Illinois Blue Book the defendant claimed residence in the Northern District of Illinois in 1969–70.

**9.** In 1972, defendant made four deposits and wrote thirteen checks from the Springfield account. In 1973, eight deposits were made and seventeen checks were written. In 1974, one deposit was made and ten checks were written. Finally, in 1975, there were no deposits in the account and only six checks were written.

Compared with four entries into two safety deposit boxes in the Springfield bank between 1972 and 1977, defendant entered his several safety deposit boxes in Chicago banks more than 200 times during the same period. When the small portion of banking transactions that occurred in Springfield are contrasted with the numerous activities conducted in the Chicago banks, it becomes clear that the majority of defendant's financial affairs took place in Chicago.

Finally, defendant was affiliated with a large number of professional, political and social organizations based in the Northern District. Defendant has argued that the Springfield address contained on his application to the Evanston Post of the American Legion evidences his Springfield domicile. It is equally significant, however, that he chose to continue associations with that organization even though his stated residence was at some distance from that particular post.

This is not to say, of course, that association with these types of groups is conclusive evidence of an intent to reside in a particular locale, particularly when the exigencies of one's position mandate various kinds of professional and social affiliations. Nevertheless, to discount these connections altogether would be to ignore a significant factor that sheds light on defendant's intent. *District of Columbia v. Murphy*, 314 U.S. 441, 457, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Blue v. National Fuel Gas Distribution Corporation*, 437 F.Supp. 715, 718 (W.D.Pa., 1977).

Although the factors cited by defendant may be sufficient to establish that he is a political resident of Springfield, when weighed against the quantity and quality of activities conducted in the Northern District, it becomes evident that Chicago is the place in which defendant established the kinds of ties more frequently associated with a permanent personal domicile. Thus, even if the portion of § 3237(b), which requires that the defendant reside in a district other than one in which the prosecution is commenced, were interpreted to mean domicile, this defendant would not be entitled to transfer. The combination of relevant facts indicates that his intent was and is to establish a permanent personal home in the Northern District of Illinois.

Therefore, the defendant's motion to transfer this case to the Central District of Illinois at Springfield is denied.