PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2328
_____

GLORIA WASHINGTON,
Appellant

v.

HOVENSA LLC;
TRIANGLE CONSTRUCTION
AND MAINTENANCE, INC.
_____

Appeal from the District Court
of the Virgin Islands
(D.C. Civil No. 1-06-cv-00097)
District Judge: Honorable Harvey Bartle, III
_____

Argued April 12, 2011

Before: SCIRICA, RENDELL and AMBRO, <u>Circuit</u> <u>Judges</u>

(Filed: July 21, 2011)
_____

K. Glenda Cameron, Esq.
Law Offices of K.G. Cameron
2006 Eastern Suburb, Suite 101
Christiansted, St Croix
USVI  00820

Lee J. Rohn, Esq.    **[Argued]**
Law Offices of Rhon & Carpenter
1101 King Street
Christiansted, VI  00820
    *Counsel for Appellant*

Sunshine S. Benoit, Esq.
Bryant, Barnes, Beckstedt & Blair
1134 King Street, 2nd Floor
P.O. Box 224589
Christiansted, St. Croix, VI  00820
    *Counsel for Appellant Hovensa LLC*

David J. Cattie, Esq.    **[Argued]**
Charles E. Engeman, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart
1336 Beltjen Road, Suite 201
St. Thomas, VI  00802
    *Counsel for Appellee Triangel
    Construction and Maintenance, Inc.*

_____

OPINION OF THE COURT
_____

2

RENDELL, <u>Circuit Judge</u>.

In this appeal, we review the District Court's grant of defendants' motion to dismiss for lack of subject-matter jurisdiction based on its determination that plaintiff Gloria Washington was domiciled in the Virgin Islands at the time she filed her complaint against defendants Hovensa, LLC ("Hovensa") and Triangle Construction and Maintenance, Inc. ("Triangle"), notwithstanding her insistence that she was domiciled in Texas. In reviewing a district court's conclusion regarding where a party is domiciled, our review is for clear error as to the court's factual determination but *de novo* as to the applicable legal principles and the court's conclusions of law. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) ("A district court's determination regarding domicile or citizenship is a mixed question of fact and law . . . ."); *Krasnov v. Dinan*, 465 F.2d 1298, 1299-1300 (3d Cir. 1972) ("Historical or chronological data which underline a court's determination of diversity jurisdiction are factual in nature.") (internal citations omitted).

Although a court's inquiry into where a party is domiciled involves a predominantly factual determination, *see McCann*, 458 F.3d at 286; *Krasnov*, 465 F.2d at 1300, certain well-defined legal precepts can, and in this case, do, govern that determination. Here, we take issue primarily with the District Court's application of those legal principles to reach the conclusion that Washington was domiciled in the Virgin Islands. We also find that the District Court erred in concluding that Washington's business, domestic and social life was centered in St. Croix. We will accordingly remand this case.

3

I.

On April 5, 2006, Gloria Washington was injured while driving a rental car on Hovensa's property in the Virgin Islands. She alleged in her complaint that, at the time she was driving, improperly trained Triangle employees were conducting sandblasts without proper supervision or barricades and using faulty sandblasting equipment. A sandblast that hit Washington's vehicle shattered the driver's side window, resulting in physical injuries to Washington and damage to her rental car. On July 24, 2006, she filed a complaint in the District Court of the Virgin Islands against Hovensa and Triangle, citizens of the Virgin Islands, based on diversity of citizenship, claiming that they were responsible for her physical injuries and the damage to the vehicle.

At the time Washington filed this complaint, she had ties to both the Virgin Islands and Texas. She owned a home in Baytown, Texas, but also had an apartment in St. Croix, where she had been living and working for seven months. She had been employed in Baytown, Texas by Sabine Storage Operations, a Texas corporation, but went to the V.I. in December 2005 to work as a pipe inspector for Sabine; there, she was assigned to work at the Hovensa refinery in St. Croix. When asked by opposing counsel at her deposition whether she knew, in December 2005, "how long the assignment [at the Hovensa refinery] was going to be, or was it indefinite," she replied: "I didn't know. It was indefinite." In summarizing her testimony on this point, the District Court stated that her "work assignment at the Hovensa refinery was for an indefinite period of time," a fact the Court considered "significant."

4

Washington was born in St. Croix, and several of her family members, including her mother, sister, and brothers, resided there in July 2006. Upon returning to the Virgin Islands in December 2005, Washington rented and furnished an apartment that she was living in at the time of the accident. The District Court found that her apartment "was in close proximity" to her "mother, sisters, brothers, nieces and nephews" and that "she socialized with them on a regular basis." The record clearly establishes only that she lived in the same area as her sister and that, at the time of her deposition, she went swimming every couple of weeks with her family. In addition, Washington began a romantic relationship with a V.I. resident after arriving in St. Croix but before filing her complaint. Between her arrival in St. Croix and the time of the accident, Washington had not returned to Texas.

At the time she filed her complaint, Washington also had several links to Texas: she owned the home in Baytown, Texas, which she was maintaining at the time of the suit and in which her daughter now lives; she received mail at her Baytown address; her primary care doctor, whom she saw at least yearly, was located in Texas; she maintained her Texas driver's license and owned a car in Texas; she paid taxes in Texas; she continued to have a bank account in Texas; she maintained a cell phone with a Texas company; and she visited Texas about three to five times a year. Conversely, in the V.I., she did not have a primary care physician, a driver's license, or a bank account, and she had never purchased a home or joined any organizations there. In July 2006, she was receiving a $100 per diem from her employer to cover her rent and other living expenses during her time in St. Croix. In an affidavit submitted after defendants filed their

5

motion to dismiss, Washington stated that, when she traveled to St. Croix, she intended to return to Texas when her project was complete, and to continue to live in Texas.

## II.

Washington sued Hovensa and Triangle in the District Court of the Virgin Islands on July 24, 2006. At the end of the discovery period that followed, both parties filed motions, the disposition of which Washington challenges on appeal. After failing to reach an agreement with defendants' counsel to extend expert discovery deadlines, Washington filed a Motion to Extend the Expert Deadlines on the basis that her vocationalist and economist did not yet have access to a hearing test that they needed in order to testify. The Magistrate Judge denied her motion, which was filed after the expiration of the deadline set by the District Court's Final Scheduling Order, finding that Washington failed to establish good cause for modifying the scheduling order under Fed. R. Civ. P. Rule 16(b)(4).

Washington also delayed in getting the Independent Medical Examination ("IME") at Triangle's expense that the parties agreed she would undergo. She canceled her first appointment and refused to have X-rays taken at the second. In response, Triangle filed an Emergency Motion for Physical Examination of Washington at her expense, which the Magistrate Judge granted. Washington then moved for reconsideration, which the Magistrate Judge denied.

After these motions were resolved, defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed. R. Civ. P. Rule 12(h)(3), on the ground that

6

Washington was domiciled in the V.I. when she filed her complaint, not in Texas, and, thus, that the District Court lacked jurisdiction over her cause of action. The District Court granted defendants' motion, finding it significant that "the center of [Washington's] business, domestic, and social life was in St. Croix," and that she was living and working in the V.I. when the complaint was filed. *Washington v. Hovensa, LLC*, 2010 WL 1734775, at \*2 (D.V.I. April 28, 2010). It placed particular emphasis on her expectation that her job in the V.I. would "continue indefinitely," relying on certain language in *Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972). *Id.* There, despite defendant's ties to Connecticut, we concluded that he was domiciled in Pennsylvania because he was to remain there indefinitely. *See Krasnov*, 465 F.2d at 1302-03. The District Court believed Washington's case to be analogous. It acknowledged that Washington owned an unoccupied house in Texas and had other ties to that state, but ultimately concluded that "her physical presence in the Virgin Islands, her intent to work indefinitely in St. Croix, and her business and social life there" pointed "decisively" towards the Virgin Islands as her domicile. *Washington*, 2010 WL 1734775, at \*2.

In determining Washington's domicile, the District Court determined that her own affidavit statement declaring her intention to return to and permanently reside in Texas "must be disregarded." It explained that "'[o]ne's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is contradicted or negatived by an inconsistent course of conduct; otherwise stated, actions speak louder than words.'" *Id.* (quoting *Korn v. Korn*, 398

7

F.2d 689, 691 (3d Cir. 1968)). Instead, the Court chose to look only to Washington's statements prior to defendants' motion to dismiss and her actions at the time of the filing of the complaint.

On appeal, Washington challenges the District Court's dismissal for lack of subject matter jurisdiction, arguing that, at the time she filed her complaint, she was on temporary assignment in the Virgin Islands for her Texas employer but that she remained a Texas domiciliary who intended to return to, and permanently reside in, Texas. She also challenges the Magistrate Judge's denial of her Motion to Extend Expert Deadlines and grant of Triangle's Emergency Motion for Physical Examination at Washington's expense.

We have jurisdiction over this appeal under 28 U.S.C. § 1291, as we are reviewing a final order of the district court.

III.

Under § 1332(a)(1), federal district courts have original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). We determine the citizenship of the parties based on the relevant facts at the time the complaint was filed. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 414 n.2 (3d Cir. 1999) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)).

A party's citizenship is determined by her domicile, and "'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to

which, whenever he is absent, he has the intention of returning.'" *McCann*, 458 F.3d at 286 (quoting *Vlandis v. Kline,* 412 U.S. 441, 454 (1973)). Thus, domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely. *See Frett-Smith v. Vanterpool*, 511 F.3d 396, 400-01 (3d Cir. 2008). When the objective and subjective concur, one's domicile is immediately established. *Krasnov*, 463 F.3d at 1300.

As we explained in *McCann*, a court considers several factors in determining an individual's domicile, including "'declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business.'" *McCann*, 458 F.3d at 286 (quoting *Krasnov,* 465 F.2d at 1301 (internal quotation omitted)). Other factors to be weighed may include "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id.* (citing 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005)). More generally, the court must locate "the center of one's business, domestic, social and civic life." *Frett-Smith*, 511 F.3d at 401.

IV.

We begin our review of the District Court's domicile determination by noting a legal precept that may not have been stressed before the District Court but that we nonetheless consider important. As we have explained, an individual's domicile changes instantly if he "takes up residence at the new domicile" and "intend[s] to remain

9

there." *Krasnov*, 465 F.2d at 1300.  But "'[a] domicile once acquired is presumed to continue until it is shown to have been changed.'" *Korn*, 398 F.2d at 691 n.4 (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)).  "This principle," we said in *McCann*, "gives rise to a presumption favoring an established domicile over a new one."  *McCann*, 458 F.3d at 286-87 (citing *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003)); *see also Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994); *Holmes v. Sopuch*, 639 F.2d 431, 434 (8th Cir. 1981); *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979); *Stine v. Moore*, 213 F.2d 446, 447 (5th Cir. 1954); 13B Wright et al., *supra,* § 3612.

This presumption does not shift the *burden of proof* to establish diversity of citizenship away from the proponent of federal jurisdiction; the party asserting diversity jurisdiction – here, Washington – retains the burden of proving that diversity of citizenship exists by a preponderance of the evidence.  *See Krasnov*, 465 F.2d at 1301.  Nevertheless, the presumption does demand more from the party seeking to establish a new domicile – here, Hovensa and Triangle – than if that party were seeking to establish a continuing domicile.  *See* 13B Wright et al., *supra,* § 3612 ("The effect of this presumption is to put a *heavier burden* on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one.").[1]  This "heavier burden" involves "shifting to . . . [the]

_____

[1] *See also* Fed. R. Evid. Rule 301 ("In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against

10

party [that bears it] the burden of production regarding the change of domicile, not raising the standard of proof." *McCann*, 458 F.2d 281 at 287 n.3.[2] When the party "claiming a new domicile is the opponent of federal jurisdiction," as here, it "bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile." *Id.* at 288. If the opposing party – in this case, Washington – is successful, the presumption is defeated, the case proceeds, and "the party asserting jurisdiction bears the burden of proving diversity of citizenship." *Id.*

Here, while it is conceivable that defendants presented enough evidence to meet their burden of production, it is not clear from the District Court's opinion that it even considered

---

whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.").

[2] The burden of proof in a civil case has two distinct components – the burden of going forward with proof, which is referred to as the "burden of production," and the burden of persuading the trier of fact, known as the "burden of persuasion." *McCann*, 458 F.3d at 287. "The party bearing the burden of persuasion must lose if the evidence is evenly balanced. The burden of production, in contrast, does not concern the quantum of proof required for a party to ultimately prevail, but instead determines which party must first present evidence sufficient to raise a given issue as pertinent." *United States v. Harstock*, 347 F.3d 1, 7 (1st Cir. 2003).

11

the presumption as it weighed the evidence. Where so many facts that our caselaw regards as important bolster the baseline presumption that Washington retained her established residence in Texas – from Washington's home ownership, driver's license, vehicle registration, bank account, cell phone, and primary care doctor in Texas to her employer's per diem payments while she was in the V.I. – defendants have a substantial initial hurdle to overcome in introducing evidence that Washington was domiciled in the V.I..[3] We are not convinced that, in light of the presumption

---

[3] Numerous cases focus on these very indicia as being important. *See, e.g.*, *Frett-Smith*, 511 F.3d at 401 (in ruling that plaintiff was domiciled in the V.I., emphasizing that she filed tax returns in the V.I. and had a U.S.V.I. driver's license); *Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) (in finding that plaintiff was domiciled in Arizona, pointing to her registration to vote in Arizona, Arizona driver's license, and listing of her Arizona address with Medicare and Social Security and on various property tax bills); *Garcia Perez v. Santaella*, 364 F.3d 348, 352-53 (1st Cir. 2004) (finding that plaintiffs were domiciled in Florida, which became their "personal and financial base," where they acquired Florida drivers' licenses, registered to vote there, and opened a Miami bank account that they used as their primary account); *Schiavone v. Donovan*, 2009 WL 2957315, at *3 (D.N.J. Sept. 15, 2009) (finding that the preponderance of evidence supports a Florida domicile where, among other facts pointing toward Florida, defendant was registered to vote in Florida, had a Florida driver's license, owned property there, had a bank account and safety deposit box there, received a tax exemption there, and registered a vehicle and maintained auto insurance there);

of continued domicile, the District Court gave the facts supporting the presumption of Washington's established domicile in Texas all the weight they deserved. While the District Court included these facts in its factual recitation, they do not appear to have been given any weight in its analysis.

The second legal principle we wish to stress relates to the consideration to be given to an admittedly self-serving affidavit. Washington submitted an affidavit after defendants filed their motion to dismiss, stating that, at the time she filed her complaint, she intended to return to Texas and to continue to live in Texas once her project in the V.I. was completed. Citing *Korn*, the District Court determined that the affidavit "must be disregarded." *Washington*, 2010 WL 1734775, at *2. It provided no further explanation beyond this citation as

---

*Doe v. Schwerzler*, 2008 WL 1781986, at *3 (D.N.J. Apr. 17, 2008) (finding that plaintiff was domiciled in Kentucky based on "proof . . . dispositive on the issue of her citizenship": that she had registered to vote in Kentucky, had a Kentucky driver's license, leased property in Kentucky, and paid utilities and income taxes there); *Murphy v. Miller*, 2005 WL 318749, at *1 (E.D. Pa. 2005) (concluding, based on "the factors that have been analyzed time and time again in this district," – including defendant's opening a bank account in California, buying and registering a car there, and applying for a California driver's license – that he was domiciled in California); *Messick v. S. Pa. Bus Co.*, 59 F. Supp. 799 (D.C. Pa. 1945) (in finding that plaintiff was domiciled in Delaware, attaching significance to his home ownership, bank account, and payment of taxes in Delaware).

13

to why it chose to disregard Washington's testimony or how the situation in *Korn* maps onto the facts at issue here.

In *Korn*, we stated that "[o]ne's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish domicile when it is *contradicted or negatived* by an inconsistent course of conduct." 398 F.2d at 691 (emphasis added). In *Korn*, a divorce action, the plaintiff sought to establish domicile in St. Thomas. He declared in an affidavit that he traveled to St. Thomas with the intent to make it his permanent residence and domicile. Yet, as we outlined in detail, his "entire course of conduct" contradicted his declaration of intent.[4] We thus

---

[4] Plaintiff was a doctor who had practiced osteopathic medicine in Philadelphia, Pennsylvania for thirty-one years before going to St. Thomas. He had been convicted in Philadelphia of performing an illegal abortion and was in the midst of divorce proceedings in both Philadelphia and New Jersey when he left suddenly for St. Thomas, discontinued the pending actions, and commenced a new divorce suit. Despite his testimony that he was coming to the V.I. to "make a new life" and start a new practice there, he made no attempt to ascertain the requirements for medical licensing until five months after arriving there. Moreover, at the time he filed the divorce action, he had made no attempt to establish a permanent home in the V.I., had traveled back and forth to the U.S. several times, had checked in and out of several hotels in the V.I., continued to list his address on official documents as Philadelphia, PA, and continued to maintain his health insurance in Philadelphia. *Korn*, 398 F.3d at 693.

14

discounted his self-serving testimony that he planned to stay in the V.I., and drew the "inescapable conclusion" that he was forum shopping in his quest for a divorce. *Id.* at 693.

However, this is not a case like *Korn* where "the surrounding facts and circumstances clearly indicate" that plaintiff's testimony is fabricated. 398 F.2d at 691. To the contrary, Washington's statement that she intended to return to and reside in Texas is buttressed, not contradicted, by her course of conduct at the time she filed her complaint. Accordingly, *Korn* is not controlling, and Washington's affidavit should not have been disregarded.

We think it is important that a court be guided by these key legal principles in determining domicile, and we will remand for it to do so and render its ruling giving them due consideration.

V.

The District Court also made an error of fact. In its brief consideration of the facts pointing toward the V.I., and those pointing toward Texas, the District Court twice mentioned that Washington's business, domestic and social life was centered in St. Croix. Yet, little evidence in the record supports this conclusion as to Washington's life at the time she filed the complaint. Washington testified to living in the same neighborhood as her sister and to starting a romantic relationship with a V.I. resident prior to filing her complaint, but the record is otherwise lacking in evidence that she socialized often with her family or with other V.I. residents or that her "business life" in the V.I. went beyond her temporary employment assignment there.

15

On the other hand, the record does contain indicia that her stay in the V.I. was transient and not permanent when she filed her complaint. As mentioned above, Washington set up none of the trappings of a "true, fixed and permanent home," *McCann*, 458 F.3d at 286, in the V.I., and her employer was paying her a $100 per diem for living expenses at the time she filed her complaint. The District Court does not mention these facts in analyzing the issue.

This factual error does not render the District Court's entire decision clearly erroneous, but it should be corrected on remand, as it is not supported by evidence in the record.

VI.

Relatedly, we note that, while it is generally useful to analogize fact patterns of other cases and base rulings on outcomes in similar cases, it may not be quite so useful in this type of case, where the facts presented can vary so slightly, and yet the slightest variation leads to a different result.[5]

Here, the District Court concluded that Washington's statement that the length of her job was "indefinite" when she went to the V.I. made her case analogous to the situation in *Krasnov*. In *Krasnov*, we ruled that defendant, a member of a semi-monastic teaching order headquartered in Connecticut

---

[5] *Cf. Gallagher v. Philadelphia Transp. Co.*, 185 F.2d 543, 546 (3d Cir. 1951) (conceding that "there is a good deal of rather ambiguous talk in the cases, some of which might arguably be taken to support [the district court's] . . . position," but nonetheless reversing the district court's domicile determination).

who was working in Pennsylvania when he filed his complaint, was domiciled in Pennsylvania. Defendant was regularly transferred to different locations for teaching assignments. He had very few possessions and owned no property other than a foot locker which accompanied him to Pennsylvania. 465 F.3d at 1301. In determining that he was a Pennsylvania domiciliary, we considered these facts as well as his testimony that he intended to remain in Pennsylvania as long as he was assigned to teach there and that the term of his teaching assignment was indefinite. *Id.* at 1301-02. However, there was no discussion in *Krasnov* of any other, let alone established, residence to which the defendant said he intended to return. Unlike Washington, he went from assignment to assignment in a different location each time. This variation in the facts makes a difference; here, we think, it is an important one. Washington's testimony as to her lack of knowledge of the length of her assignment in the V.I. is not analogous to the situation in *Krasnov*.

Accordingly, we will vacate and remand for further proceedings consistent with this opinion.

## VII.

Washington also challenges the Magistrate Judge's orders denying her motion for extension of expert deadlines and granting defendants' motion to compel a medical examination.[6] We find that, because Washington failed to

---

[6] We review a district court's discovery order for abuse of discretion, and we will not disturb such an order absent a showing of actual or substantial prejudice. *Anderson v. Wachovia Mortg. Corp.*, 621 F.2d 261, 281 (3d Cir. 2010).

follow the proper procedure to object to the Magistrate Judge's order denying extension of expert deadlines, she has waived her right to challenge this order on appeal. *See United Steelworkers of Am. v. New Jersey Zinc Co.*, 828 F.2d 1001, 1006 (3d Cir. 1987). Moreover, even if the issue were not waived, we discern no abuse of discretion in the Magistrate Judge's denial of Washington's request based on a finding that Washington failed to establish good cause for modifying the scheduling order. The Magistrate Judge also did not abuse his discretion in granting appellees' motion to compel a medical examination and in requiring Washington to pay the expenses of the examination. Accordingly, we affirm the Magistrate Judge's rulings on these motions.