

Villanova University School of Law Digital Repository

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-16-2006

# McCann v. George W Newman

Precedential or Non-Precedential: Precedential

Docket No. 05-2312

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"McCann v. George W Newman" (2006). *2006 Decisions.* Paper 521.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/521

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2312

_____

VIRGINIA McCANN, on behalf of the
Estate of William E. McCann,
                              Appellant

v.

THE GEORGE W. NEWMAN IRREVOCABLE TRUST;
THE BANK OF NEW YORK, as Trustee of the
Irrevocable Trust of George W. Newman;
MARC JOSEPH, as Trustee of the
Irrevocable Trust of George W. Newman;
PATRICIA J. THERYOUNG, as Trustee of the
Irrevocable Trust of George W. Newman

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 03-cv-6077
(Honorable Dennis M. Cavanaugh)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)

April 27, 2006
Before: SCIRICA, *Chief Judge*,
NYGAARD and ALARCÓN[*], *Circuit Judges*

(Filed: August 16, 2006)

GEORGE H. PARSELLS, ESQUIRE
JOHN P. LEONARD, ESQUIRE
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
     Attorneys for Appellant

GARY K. WOLINETZ, ESQUIRE
JEMI M. GOULIAN, ESQUIRE
Greenbaum, Rowe, Smith & Davis LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
     Attorneys for Appellees,
     The George W. Newman Irrevocable Trust and
     Marc Joseph, as Trustee of the
     Irrevocable Trust of George W. Newman

---

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial Circuit, sitting by designation.

CHRISTOPHER J. STRACCO, ESQUIRE
Pitney Hardin LLP
P.O. Box 1945
Morristown, NJ  07962
    Attorney for Appellee,
    The Bank of New York, as Trustee of the
    Irrevocable Trust of George W. Newman

LORI E. GRIFA, ESQUIRE
JOSEPH TRIPODI, ESQUIRE
Wolff & Samson PC
The Offices at Crystal Lake, One Boland Drive
West Orange, NJ  07052
    Attorneys for Appellee,
    Patricia J. Theryoung, as Trustee of the
    Irrevocable Trust of George W. Newman

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

In this appeal from the District Court's final order granting defendants' motion to dismiss for lack of subject matter jurisdiction, the issue is whether plaintiff established diversity of citizenship based on a change of domicile.  We will vacate and remand.

3

## I.

## A.

On July 6, 1990, George W. Newman established and funded the George W. Newman Irrevocable Trust to acquire and hold property in Secaucus, New Jersey. Newman named as trustees Patricia Theryoung, Marc Joseph, and the National Community Bank, which was later acquired by the Bank of New York. Newman's development company, Allied Junction Corporation, was to develop the property acquired by the trust into a commercial and transportation center. Newman hired William E. McCann as President, Chief Executive Officer, and Director of Operations of Allied Junction Corporation, which later became Secaucus Connection, L.L.C.

A dispute arose between McCann and the Newman Trust over McCann's compensation. Theryoung and the Bank of New York, as trustees, agreed to settle the dispute by granting McCann an equity interest in the development project. Joseph, the third trustee, filed an action in state court to enjoin the other two trustees from entering the proposed agreement with McCann and from granting McCann any interest in trust property.

McCann died in February 2002 while this and related state court actions were pending. McCann's widow, Virginia, filed an action to intervene on behalf of McCann's estate, which the court denied. The court also dismissed all pending actions because Theryoung and the Bank of New York—the trustees

4

who negotiated the agreement granting McCann an interest in the development project—had since resigned.

On December 23, 2004, McCann's estate filed an action in federal court in New Jersey against the Newman Trust and its trustees, seeking to enforce the proposed agreement. The estate asserted subject matter jurisdiction based on diversity, contending McCann had changed his domicile from New Jersey to New Hampshire prior to his death. Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), contending diversity of citizenship was lacking because all parties were domiciled in New Jersey.[1]

## B.

The material facts regarding McCann's domicile are undisputed. In 1969, he and his wife, Virginia, purchased a house in Short Hills, New Jersey, where they resided for over thirty years. In 1990, they purchased a second house in North Hampton, New Hampshire. In June 2000, they sold their New Jersey house and moved their furniture and personal belongings

---

[1]Defendants Theryoung and the Bank of New York also filed motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They contended they lacked the authority to grant the relief the estate requested because they were no longer trustees of the Newman Trust. Because the District Court dismissed the complaint for lack of subject matter jurisdiction, it did not consider their motions to dismiss for failure to state a claim.

to New Hampshire. Virginia became a full-time resident of New Hampshire, but McCann rented an apartment in Springfield, New Jersey, and continued to live and work in New Jersey during the week. He spent weekends in New Hampshire.

McCann stopped commuting to New Jersey in November 2001, when he stopped receiving a salary from Secaucus Connection, L.L.C. During the three months between November 2001 and his death in February 2002, he traveled to New Jersey four times to attend meetings regarding the development project. He did not use his New Jersey apartment after January, but he did not cancel or break the lease or sublet the apartment.

McCann had ties to both states. He registered to vote in New Jersey in August 2001 and voted in the New Jersey general election on November 6, 2001. He registered to vote in New Hampshire at the end of November, but never actually voted there prior to his death. On July 30, 1999, he obtained a New Hampshire driver's license, but he maintained a New Jersey license, which he renewed after receiving the New Hampshire license. When Virginia became a full-time New Hampshire resident, the McCanns registered and insured all of their personal vehicles in New Hampshire. McCann had use of a company car in New Jersey.

McCann transferred his personal bank accounts to New Hampshire, but maintained a brokerage account in excess of $2.6 million in New Jersey. His federal income tax returns filed during his life represented he was a New Jersey resident. But

6

his 2001 federal income tax return, prepared by Virginia and filed after his death, represented he was a New Hampshire resident. Virginia's application for continued health insurance coverage after McCann's death represented he was a New Jersey resident. McCann's funeral was held in New Jersey, but he was buried in New Hampshire.

## C.

On August 8, 2005, the District Court heard oral argument on defendants' motion to dismiss. Neither party requested—and the court did not hold—an evidentiary hearing regarding McCann's domicile. Following oral argument, the District Court dismissed the estate's complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). In a letter opinion dated the same date, the court explained, "the burden here rests squarely on Plaintiff to demonstrate by clear and convincing evidence that McCann 1) took up residence in New Hampshire, and 2) intended to remain there." (App. 8.) The court concluded the estate had not met this burden and accordingly, had not established McCann changed his domicile to New Hampshire prior to his death.

The estate contends on appeal that the District Court erred in applying a clear and convincing evidence standard of proof, in concluding McCann was not a domiciliary of New Hampshire, and in failing to hold an evidentiary hearing prior to dismissing the complaint.

## II.

7

We have jurisdiction to review the District Court's final order granting defendants' motion to dismiss under 28 U.S.C. § 1291.

A district court's dismissal for lack of subject matter jurisdiction is a question of law, over which we exercise plenary review. *See Golden ex rel. Golden v. Golden,* 382 F.3d 348, 354 (3d Cir. 2004); *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.* 316 F.3d 408, 410 (3d Cir. 2003). A district court's determination regarding the relevant burden of proof is also a question of law, over which we exercise plenary review. *See United States v. Rodriguez,* 342 F.3d 296, 298 (3d Cir. 2003); *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 750 (3d Cir. 1994).

A district court's determination regarding domicile or citizenship is a mixed question of fact and law, but primarily one of fact, which we review for clear error. *See Krasnov v. Dinan,* 465 F.2d 1298, 1299–1300 (3d Cir. 1972). Under this standard of review, "our sole function is to review the record to determine whether the findings of the District Court were clearly erroneous, i.e., whether we are 'left with a definite and firm conviction that a mistake has been committed.'" *Id.* at 1302 (quoting *Speyer, Inc. v. Humble Oil and Ref. Co.*, 403 F.2d 766, 770 (3d Cir. 1968)).

**III.**

**A.**

8

Federal district courts are vested with original jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between "citizens of different States." 28 U.S.C. § 1332(a)(1). If a party is deceased, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." § 1332(c)(2).

Several principles guide our analysis of a party's citizenship for purposes of subject matter jurisdiction. The party asserting diversity jurisdiction bears the burden of proof. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)*; Samuel-Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir. 2004). A party generally meets this burden by proving diversity of citizenship by a preponderance of the evidence. *McNutt*, 298 U.S. at 189.

Citizenship is synonymous with domicile, and "the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline,* 412 U.S. 441, 454 (1973). In determining an individual's domicile, a court considers several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov*, 465 F.2d at 1301 (quotation omitted). Other factors to be considered may include location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration. 13B Charles Alan

9

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005).

An individual can change domicile instantly. To do so, two things are required: "[h]e must take up residence at the new domicile, and he must intend to remain there." *Krasnov,* 465 F.2d at 1300. But "[a] domicile once acquired is presumed to continue until it is shown to have been changed." *Mitchell v. United States*, 88 U.S. 350, 353 (1874); *Korn v. Korn*, 398 F.2d 689, 691 n.4 (3d Cir. 1968) (quoting *Mitchell*, 88 U.S. at 353). This principle gives rise to a presumption favoring an established domicile over a new one. *See, e.g., Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003)*; Gutierrez v. Fox,* 141 F.3d 425, 427 (2d Cir. 1998); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994); *Holmes v. Sopuch,* 639 F.2d 431, 434 (8th Cir. 1981); *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979); *Stine v. Moore,* 213 F.2d 446, 447 (5th Cir. 1954); *see also* 13B Wright et al., *supra*, § 3612.

Here, the estate—the proponent of federal jurisdiction—bore the burden of establishing diversity of citizenship. The District Court required it to carry this burden by proving a change in domicile by clear and convincing evidence.[2] The District Court noted the presumption in favor of

---

[2]As defendants note, following oral argument, the District Judge stated the estate had not established "by clear and convincing evidence or even by a preponderance of the

an original or former domicile, and explained, "[w]here the proponent of federal jurisdiction is also the party contending that there has been a change of domicile of one of the litigants, the effect of this presumption is to raise the standard of proof which that party must bear." (App. 7–8.) The court cited Federal Practice and Procedure, which states, "[t]he effect of this presumption is to put a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one."[3] 13B Wright et al., *supra*, § 3612. The court noted, "[t]hough the Third Circuit has not ruled on this issue, many district courts within this Circuit, as well as courts within the Second Circuit, have required proof of change in domicile by clear and convincing evidence." (App. 8 n.3.) The District Court

---

evidence, that [McCann] actually changed his domicile to New Hampshire." (App. 393.) But the District Court's letter opinion clearly states the court was applying a clear and convincing evidence standard.

[3]Federal Practice and Procedure does not state the presumption imposes a higher standard of proof on a party trying to establish a change of domicile. It states only that the presumption places a "heavier burden" on the party. 13B Wright et al., *supra*, § 3612. As discussed, we believe this "heavier burden" entails shifting to that party the burden of production regarding the change of domicile, not raising the standard of proof.

11

concluded it would "follow their lead and apply a clear and convincing standard." (*Id.*)

We are not convinced the proper standard is proof by clear and convincing evidence. There are two distinct elements of the burden of proof—the burden of production and the burden of persuasion. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) ("The 'burden' in a civil case involves not one but *two* elements: the burden of going forward with proof (the burden of 'production') and the burden of persuading the trier of fact (the burden of 'proof')."); *see also* 21B Wright et al., *supra*, § 5122.

Under Fed. R. Evid. 301,[4] a presumption in a civil case imposes the burden of production on the party against whom it is directed, but does not shift the burden of persuasion. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 659–60 (1989); *In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004). We have interpreted Rule 301 to express the Thayer-Wigmore "bursting bubble" theory of presumptions. *See*

---

[4]Fed. R. Evid. 301 provides:

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

12

*McKenna v. Pac. Rail Serv.,* 32 F.3d 820, 829–30 (3d Cir. 1994); *id.* at 841 (Mansmann, J., dissenting). Under this theory, "the introduction of evidence to rebut a presumption destroys that presumption, leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue." *Id.* at 830. In other words, the presumption shifts the burden of producing sufficient evidence to rebut the presumed fact. Once that burden is met, the presumption "disappears from the case."[5] J. Weinstein & M.A. Berger, Weinstein's Evidence § 301.02[2] (2d ed. 2004); *see also* J. H. Wigmore, Wigmore on Evidence § 2491 (3d ed. 1940). This view of Rule 301 is widely accepted. *See, e.g., In re Yoder Co.,* 758 F.2d 1114, 1119 (6th Cir. 1985) (stating most commentators conclude that under Rule 301, "a presumption vanishes entirely once rebutted, and the question must be decided as any ordinary question of fact"); *see also Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995); *A.C. Aukerman Co., v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1037–1038 (Fed. Cir. 1992); *Legille v. Dann,* 544 F.2d 1, 5–7

---

[5]As we explained in *Sheridan v. E.I. DuPont de Nemours and Co.*, in saying the presumption drops from the case, we do not imply the trier of fact can no longer consider the evidence that initially gave rise to the presumption. 100 F.3d 1061, 1069 (3d Cir. 1996). "[T]his evidence and inferences properly drawn therefrom may be considered by the trier of fact." *Id.* (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 n.10 (1981)).

(D.C. Cir. 1976); Weinstein et al., *supra,* § 301.02[4]. *But see* 21B Wright et al., *supra*, § 5122.2 (disagreeing with this interpretation of Rule 301).[6]

Under Rule 301, the presumption favoring an established domicile places the burden of production on the party alleging a change in domicile, but does not affect the burden of persuasion, which remains throughout with the proponent of federal jurisdiction. Accordingly, the presumption's only effect is to require the party asserting a change in domicile to produce enough evidence substantiating a change to withstand a motion for summary judgment or judgment as a matter of law on the issue.

When the party claiming a new domicile is the opponent of federal jurisdiction, the effect of the presumption in favor of an established domicile is straightforward. The party claiming a new domicile bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile. If the party does so, the presumption disappears, the

---

[6]For an explanation of how Rule 301's legislative history supports our interpretation, and a response to the leading argument to the contrary, *see Sheridan,* 100 F.3d at 1080 (Alito, J., dissenting). The majority in *Sheridan* similarly interpreted Rule 301 to express the "bursting bubble" theory, differing with the dissent only on the consequences in a Title VII discrimination case after the presumption "dissipated or 'burst.'" *Id.* at 1069.

case goes forward, and the party asserting jurisdiction bears the burden of proving diversity of citizenship.  *See e.g. Bank One, Tex. N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992); *Lew*, 797 F.2d at 749–51.

When the party claiming a new domicile is the proponent of federal jurisdiction, the effect of the presumption is less straightforward.  One of the parties will bear both burdens—the burden of production regarding domicile and the burden of persuasion regarding federal jurisdiction.  The District Court followed other courts in concluding the effect of placing both burdens on one party was to raise the relevant standard of proof.  (*See* App. 8 n.3 (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Avins v. Hannum*, 497 F. Supp. 930, 936 (E.D. Pa. 1980), *Liakakos v. Cigna Corp.*, 704 F. Supp. 583, 586 (E.D. Pa. 1988); *Hakkila v. Consol. Edison Co. of N.Y.*, 745 F. Supp. 988, 990 (S.D.N.Y. 1990)).)  We are not so certain.  We believe the effect of placing both burdens on one party is to require the party to initially carry the burden of production to rebut the presumption in favor of an established domicile.  If and when the party does so, the presumption falls out of the case and the party is required to carry the burden of persuasion by proving that a change of domicile occurred, creating diversity of citizenship.  Whether the party asserting a change of domicile is asserting or contesting federal subject matter jurisdiction, the appropriate standard of proof is preponderance of the evidence.

Several Supreme Court cases reiterate the basic tests for establishing diversity jurisdiction, but do not state the requisite

burden of proof for establishing a change of domicile.  *See, e.g., Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *KVOS, Inc., v. Associated Press*, 299 U.S. 269, 277–78 (1936); *McNutt*, 298 U.S. at 189*; Gilbert v. David*, 235 U.S. 561, 566-67 (1915).  We believe our conclusion is consistent with the guidance we can glean from these cases.  In *McNutt*, in determining whether the amount in controversy satisfied the diversity jurisdiction requirement, the Court directly and specifically set forth preponderance of the evidence as the appropriate standard of proof.  298 U.S. at 189 ("And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed . . . the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.").  We see no reason why the Court's directive should not apply to all facts supporting diversity jurisdiction.

Our conclusion is also consistent with the conclusion of the Court of Appeals for the First Circuit, which explicitly rejected the clear and convincing standard as the appropriate standard for proving a change of domicile for purposes of diversity jurisdiction, and adopted the preponderance of the evidence standard.  *Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004).  The court held "[t]o the extent that the court evaluated the appellants' evidence under a clear and convincing standard, plain error occurred." *Id.* at 352.  Without offering its rationale, the court concluded once a party's domicile is challenged, the party invoking diversity jurisdiction must prove

16

domicile by a preponderance of the evidence, even if a party is alleging a new domicile. *Id.* at 351.

The only other court of appeals to have conclusively addressed this issue—the Court of Appeals for the Second Circuit—adopted the clear and convincing standard. *See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243 (2d Cir. 1984); *see also Palazzo*, 232 F.3d at 42. But we believe the Second Circuit cases are of limited relevance to our determination of the proper standard. *Katz*, the case that originally adopted the standard, based its domicile determination on New York law. *See Katz*, 737 F.2d at 243 ("Under New York law, the party asserting a change in domicile has the burden of proving such a change by clear and convincing evidence."). *Palazzo* followed *Katz* in applying the clear and convincing evidence standard. *Palazzo*, 232 F.3d at 42. The determination of whether a litigant is domiciled in a particular state for purposes of diversity jurisdiction is properly based on federal law. *See Acridge*, 334 F.3d at 448; *Rishell v. Jane Phillips Episcopal Mem'l Med. Center*, 12 F.3d 171, 172 (10th Cir. 1993)*; Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973); *Ziady v. Curley*, 396 F.2d 873, 874 (4th Cir. 1968). The Court of Appeals for Second Circuit provided no reasoning for application of the clear and convincing standard based on federal law.

We conclude the appropriate standard is preponderance of the evidence. Because of this conclusion, we will vacate the District Court's order applying the clear and convincing

17

evidence standard.  We will remand for reconsideration under the preponderance of the evidence standard.

**B.**

Though it did not request an evidentiary hearing, the estate now contends the District Court erred in dismissing its complaint without a hearing.  Because district courts "enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions," *Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990), and because of the circumstances of this case, we conclude the District Court did not err in this respect.

In its letter opinion, the District Court recited the established procedures for ensuring a ruling on a Rule 12(b)(1) motion is based on an adequate factual record.  (App. 6 (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711–12 (3d Cir. 1982); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000)).)  If a defendant does not challenge the facts alleged in the plaintiff's pleadings, a court may rule on the motion by accepting these allegations as true.  *Gould Elec.*, 220 F.3d at 177.  If a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence.  *Id.* If there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction.  *Id.*  Here, the District Court concluded none of the

18

material facts were in dispute. Accordingly, the court proceeded to determine its jurisdiction by weighing the relevant evidence.

The estate notes the District Court's statement that "Defendants have offered many facts which cast doubt upon the inferences raised by Plaintiff regarding McCann's intent," (App. 8–9), and contends these "inferences" were disputed issues of material fact that should not have been resolved without a hearing. But elsewhere, the estate notes "Defendants-Appellees simply do not counter these facts. Instead they introduce other 'facts' and argue that their facts outweigh those presented by the Estate." (Reply Br. 3.) As the District Court noted, the accuracy of the facts submitted by the parties was not in dispute. What was in dispute was the estate's allegation that these facts demonstrated a change of domicile. In a similar situation, the Court of Appeals for the First Circuit concluded an evidentiary hearing was not necessary. *See Valentin v. Hospital Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001).

A court can evaluate its jurisdiction without an evidentiary hearing "so long as the court has afforded [the parties] notice and a fair opportunity to be heard." *Tanymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323–1324 (3d Cir. 1972); *see also Valentin*, 254 at 364; *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000). A key consideration in determining whether a hearing is required is whether either party requested one. *See Valentin*, 254 F.3d at 364–65; *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1120 (1st Cir. 1989). Here, the parties had ample opportunity to

19

be heard through depositions, affidavits, and briefs. Neither party requested an evidentiary hearing, and the estate did not object to the absence of one until after their complaint was dismissed. The District Court did not err in not holding a hearing before dismissing the complaint.

## IV.

For the reasons set forth, we will vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.