# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3347

_____

Bobby L. Johnson,    *
   *
       Plaintiff - Appellant,    *
   *
   *   Appeal from the United States
     v.    *   District Court for the District
   *   of South Dakota.
United States of America,    *
   *
       Defendant - Appellee.    *

_____

Submitted: May 13, 2008
Filed: July 25, 2008

_____

Before LOKEN, Chief Judge, BYE and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Bobby L. Johnson brought an action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, against the United States alleging Bureau of Indian Affairs (BIA) correctional officer Shobe Little Light (Little Light) and Standing Rock Sioux Tribal Police Officer Gary Sandland committed the following torts while arresting him in September 2003: (1) false and unlawful arrest; (2) arrest without authority and beyond job description; (3) false imprisonment; (4) assault and battery; (5) negligent exercise of force; (6) failure to secure timely medical care; (7) deliberate indifference to medical needs; (8) cruel and unusual punishment; and (9) violation of due process and equal protection of the laws. Pursuant to the

government's motion, the district court[1] dismissed all of Johnson's claims for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1). Johnson appeals the dismissal of his tort claims arising from the conduct of Little Light.[2]  Because Little Light was acting outside of the scope of his employment as a BIA correctional officer at the time of the September 2003 incident, we affirm.

I

In September 2003, the BIA temporarily stationed Little Light, a correctional officer from the Crow Agency detention facility in Montana, at the BIA's Standing Rock Agency detention facility in Fort Yates, North Dakota.  The BIA provided Little Light temporary lodging in Mobridge, South Dakota, which is about an hour south of Fort Yates.  In addition, the BIA provided Little Light a government vehicle equipped with a police radio.

On September 23, 2003, while driving to Mobridge after his shift at the detention facility had ended, Little Light observed Johnson operating his vehicle in a dangerous manner, swerving from one side of the road to the other.  After Johnson stopped his vehicle on the side of the road, Little Light pulled over near him and stopped to determine if he was in need of assistance.  Johnson was outside of his vehicle and advised Little Light he had a flat tire.  Little Light determined Johnson reeked of alcohol and was slurring his speech.  Believing Johnson to be intoxicated and a menace on the highway, Little Light, who was wearing his correctional officer

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

[2]Because Johnson appeals only the district court's dismissal of his tort claims arising from Johnson's conduct, we do not discuss Johnson's constitutional claims or his claims arising from Sandland's conduct.

uniform, attempted to detain him. Johnson took off into a field and Little Light went after him, initially on foot, and subsequently in his car.

What transpired next is in dispute. According to Johnson, after Little Light caught up to him, he was punched in the stomach, causing him to vomit. Little Light identified himself as an off-duty police officer and advised Johnson he was going to jail. He placed Johnson in the government vehicle and drove back to where Johnson's vehicle was parked. As he was moving Johnson from the government vehicle, Johnson asked him why he was arresting him and, in response, Little Light threw Johnson to the ground and began beating him. At some point, Standing Rock Tribal Police Officer Gary Sandland arrived upon the scene and Johnson claims Sandland stated to Little Light: "[H]e has had enough; just leave him alone." Appellant's Br. at 4.

The government contends Johnson gave up and approached Little Light, at which point Little Light handcuffed him, placed him in the back of the government vehicle, and fastened his seat belt. As Little Light was driving back to where Johnson's vehicle was located, Johnson jumped out of the car and began running back towards the river. While running, Johnson lost his footing and fell face first. Little Light noticed Johnson was moving around so he kept Johnson handcuffed and, additionally, tied his shoelaces together. Thereafter Little Light made his way back to the highway and flagged down a bus. The bus driver called for help, and some time later an ambulance crew and Officer Sandland arrived.

Following the incident, Johnson was admitted to the hospital with a minor clavicle fracture, closed head injury, and multiple abrasions and cuts around his eyes, head, neck, and trunk. His blood alcohol level was .264. Johnson remained a patient in the hospital for about six weeks, and he subsequently required speech therapy.

Subsequently, Johnson brought an action under the FTCA against the United States asserting various tort and constitutional claims arising from the conduct of Little Light and Sandland during the September 2003 incident. The government moved to dismiss Johnson's complaint in its entirety arguing: (1) Johnson could not establish the threshold requirements of jurisdiction under the FTCA; and (2) even if the district court did have subject matter jurisdiction over Johnson's claims, Johnson's complaint failed to state a claim on which relief could be granted. Agreeing with the government that Johnson could not establish the FTCA's jurisdictional requirements, the district court dismissed Johnson's complaint under Fed. R. Civ. P. 12(b)(1).

With respect to Johnson's tort claims arising from Little Light's conduct, first the district court ruled the FTCA's intentional torts exception, which bars suits against the government for claims arising out of assault unless the federal employee was an investigative or law enforcement officer, see 28 U.S.C. § 2680(h), barred Johnson's claims arising out of Little Light's alleged assault (false arrest, arrest without authority, assault and battery, false imprisonment, and failure to secure timely medical care). Specifically, the district court concluded Little Light was not an investigative or law enforcement officer. Second, the district court ruled it lacked jurisdiction over Johnson's tort claims arising out of Little Light's alleged negligence because Johnson failed to establish Little Light was acting within the scope of his employment at the time he allegedly committed these torts.

On appeal, Johnson makes two arguments for reversal. First, he argues he has adequately proven jurisdiction under the FTCA for his tort claims arising from both the negligent and intentional acts of Little Light and, therefore, the district court erred in granting the government's Rule 12(b)(1) motion to dismiss. Second, he argues the district court erred in ruling on the government's 12(b)(1) motion without first allowing him the opportunity to conduct discovery and without holding an evidentiary hearing.

II

Turning to the merits, Johnson argues the district court wrongly concluded Little Light's alleged acts were beyond the scope of his employment. Second, he argues the district court erred in ruling the intentional torts exception to the FTCA bars his claims arising out of Little Light's alleged assault.

A

A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). In this case, the district court dismissed Johnson's action on the second basis: the complaint supplemented by undisputed facts. Consequently, we review the record to determine whether those facts are "indeed undisputed," Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (citations omitted), and, if they are, we review de novo the district court's application of the law to those facts, Appley v. United States, 164 F.3d 1164, 1170 (8th Cir. 1999).

B

The FTCA provides a limited waiver of sovereign immunity, allowing the United States to be held liable for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see United States v. Olson, 546 U.S. 43, 44-45 (2005).

-5-

A threshold requirement to establish jurisdiction under the FTCA is that the federal employee must have been acting within the scope of his employment when the tort was committed. See Primeaux v. United States, 181 F.3d 876, 878 (8th Cir. 1999) ("In determining the extent of the government's FTCA liability, 'scope of employment' sets the line.") (quoting Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 423 (1995)). Scope of employment questions are governed by the law of the state where the alleged tortious acts took place, see St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001) (citing Brown v. Armstrong, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991), which is South Dakota in this case. "However, FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority." Id. (citing Primeaux, 181 F.3d at 878).

Under South Dakota law, the scope of employment analysis is based on a foreseeability test, which "evaluates whether a sufficient nexus exists 'between the agent's employment and the activity which actually caused the injury.'" Id. (quoting Leafgreen v. Am. Family Mut. Ins. Co., 393 N.W.2d 275, 280 (S.D. 1986)). In determining whether an employee's act is within the scope of employment a court considers a number of factors, including: (1) whether the act is commonly done in the course of business; (2) the time, place, and purpose of the act; (3) whether the act is within the enterprise of the master; the similarity of the act done to the act authorized; (4) whether the means of doing harm has been furnished by the master; and (5) the extent of departure from the normal method of accomplishing an authorized result. See Deuchar v. Foland Ranch, Inc., 410 N.W.2d 177, 180, n.2 (S.D. 1987) (quoting Restatement (Second) of Agency § 229 (1958)).

In applying the foreseeability analysis to the alleged actions of Little Light, the district court correctly concluded such actions were not within the scope of his employment. First, it cannot be said Little Light's actions in detaining and arresting Johnson were performed in connection with, or were incidental to Little Light's responsibilities as a BIA corrections officer. The BIA's corrections program is distinct

from the BIA's law enforcement program. Correctional officers supervise inmates and maintain order within the BIA's detention facilities. To carry out this function, correctional officers have limited authority to use restraints, such as handcuffs, when transporting inmates to and from a facility, and limited authority to conduct inspections of inmates's cells and other areas of a facility. However, they have no authority to make arrests. See Addendum, p. 10 [Declaration of Rivera ¶4] (explaining it is "the BIA's policy not to authorize its corrections officers to make arrests."). Second, the incident took place on a highway, far removed from the detention facility where Little Light had authority to act. Third, the incident took place after his work-shift had ended and while he was on his way to his temporary abode. These factors, taken together, demonstrate his actions in detaining Johnson were outside the scope of his employment.

Johnson argues because the jurisdictional question is "intertwined" with the merits of his lawsuit, the district court could not determine this issue on a 12(b)(1) motion. While Johnson is correct that generally, whether an employee's actions are within the scope of their employment is a question of fact, we fail to see how the factual nature of this inquiry somehow renders the jurisdictional issue "so bound up with the merits that a full trial on the merits" is necessary to resolve the issue. Crawford v. United States, 796 F.2d 924, 929 (7th Cir. 1996). Indeed the issue whether Little Light's conduct was within the scope of his employment is unrelated to whether Little Light's conduct was negligent, which is the most important issue on the merits.

In this case, it is clear at the time of the September 2003 incident Little Light was not acting within the scope of his employment as a correctional officer. Therefore, there was nothing improper in the district court resolving the scope of employment question in ruling on the government's 12(b)(1) motion. Osborn, 918 F.2d at 730 ("[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.") (citations omitted).

-7-

Accordingly, we conclude Johnson has failed to establish Little Light was acting within the scope of his employment– a threshold requirement to establish jurisdiction under the FTCA. Because our conclusion disposes of all of Johnson's claims arising out of Little Light's conduct, we do not address Johnson's additional contention that the district court wrongly concluded the intentional torts exception applied to certain of his claims.

III

Johnson also seeks reversal of the district court's dismissal on procedural grounds. Specifically, Johnson contends the district court erred in ruling on the government's 12(b)(1) motion without first allowing discovery or conducting an evidentiary hearing. A Rule 12(b)(1) motion challenges whether the district court has subject matter jurisdiction to hear the matter. Because "there is no statutory procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Land v. Dollar, 330 U.S. 731, 735 n.4 (1947). Trial courts have "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). Thus, we review the denial of an evidentiary hearing and the denial of a request for discovery utilizing an abuse of discretion standard. United States v. Gines, 964 F.2d 972, 977 (10th Cir. 1992).

Turning first to the issue whether an evidentiary hearing was necessary, "[a] court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'" McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006) (quoting Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320, 1323-24 (3d Cir. 1972)). See also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). Here, the parties had ample opportunity to be heard through affidavits and briefs. Neither party requested an evidentiary hearing, and Johnson did not object to the

absence of one until after the district court dismissed his complaint. McCann, 458 F.3d at 291 ("A key consideration in determining whether a hearing is required is whether either party requested one."). Under these circumstances, we cannot say the district court's failure to hold an evidentiary hearing before ruling on the government's 12(b)(1) motion was an abuse of discretion.

Nor do we believe the court abused its discretion in failing to afford Johnson additional discovery. Johnson contends certain statements in his declaration established a basis for additional discovery. Specifically, Johnson points to his statement alleging the FBI has photographs of him from the September 2003 incident, which it refuses to disclose. According to Johnson, this statement establishes an adequate basis to allow discovery on the jurisdictional issues. We disagree.

Courts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts. See Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004) ("Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56 motion, a court may nonetheless look to Rule 56(f) for guidance in considering the need for discovery on jurisdictional facts.") (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); Exch. Nat'l Bank v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)). To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful. Id. (citing Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy, 891 F.2d 414, 422 (2d Cir. 1989)).

While the statement in Johnson's declaration arguably establishes the facts Johnson is seeking and why his efforts to obtain those facts were unsuccessful, Johnson does not explain how these photographs are reasonably expected to raise a genuine issue of material fact relevant to whether the district court had subject matter

-9-

jurisdiction under the FTCA. Specifically, these pictures bear no relevance to the jurisdictional issues decided by the district court in ruling on the government's 12(b)(1) motion. Accordingly, the district court did not abuse its discretion in denying Johnson the opportunity to conduct discovery.

## IV

Accordingly, based on our determination Little Light was not acting within the scope of his employment during the September 2003 incident, we affirm the district court's order dismissing for lack of subject matter jurisdiction Johnson's claims arising from Little Light's conduct.

_____