**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2148
_____

JOHN F. O'CONNELL,
                                        Appellant

v.

NEW JERSEY TURNPIKE AUTHORITY;
LINDA LORDI CAVANAUGH; JOHN O'HERN;
MARY ELIZABETH GARRITY; DIANE SCACCETTI;
JAMES S. SIMPSON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ No. 2-12-cv-00049)
District Judge: Hon. Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 24, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: May 23, 2016)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant John O'Connell appeals the District Court's order granting summary judgment in favor of Appellee the New Jersey Turnpike Authority ("NJTA") on O'Connell's claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.* and the New Jersey Constitution. For the reasons that follow, we conclude that the District Court did not have subject matter jurisdiction over O'Connell's claims because they do not raise a federal question and the requirements for diversity jurisdiction are not satisfied because both parties are citizens of New Jersey. Accordingly, we will vacate the order of the District Court and direct the District Court to remand the case to the New Jersey Superior Court.

I.

O'Connell began working as a Staff Attorney at the NJTA in 2002. In May 2003, O'Connell, who served in the United States Navy from 1987 to 1997, entered the New Jersey Air National Guard while still serving as a full-time employee of the NJTA. Between 2003 and 2012, O'Connell was called to active duty on eight occasions, serving a total of 2,188 days. One such occasion occurred in July 2010 after O'Connell was selected to attend the Industrial College of the Armed Forces in Washington, D.C. Although O'Connell's attendance in the program was initially scheduled to result in a one-year absence from the NJTA, O'Connell did not complete the program on time due to medical issues. In light of this, O'Connell was on active duty until September 30, 2012, during which time he resided in Arlington, Virginia.

On November 29, 2011—while still residing in Virginia—O'Connell filed this lawsuit in the New Jersey Superior Court against the NJTA and five individuals.[1] O'Connell asserted claims for: (1) harassment because of his military service, in violation of the NJLAD; (2) intentional violation of civil rights under the New Jersey Constitution; and (3) negligent infliction of emotional distress. On January 3, 2012, the NJTA filed a notice of removal to the United States District Court for the District of New Jersey. The NJTA removed the case on the basis of federal question jurisdiction under 28 U.S.C. § 1331 despite the fact that O'Connell only brought claims under New Jersey state law.[2] O'Connell did not challenge the removal, however, and on November 19, 2012, O'Connell filed an Amended Complaint in the District Court that was identical in all material respects to the Complaint he filed in the New Jersey Superior Court. Although O'Connell was residing in New Jersey at this time, he stated in the preamble of his

---

[1] The five individual defendants were eventually dismissed from the action by stipulation, and we will refer only to the NJTA as the defendant in this case.

[2] To support removal on federal question grounds, the NJTA relied upon O'Connell's assertions in his Complaint that, as a member of the military, he was "subject to Title 10 of the United States Code," (App. 41), and that he had been harassed because his superiors requested "copies of military orders which he had previously provided to them." (App. 45.) Additionally, the NJTA relied upon averments that O'Connell "received notice from the Division of Pension stating that benefits from his pension account were being terminated," (App. 49), and a remark that the NJTA "deprived [O'Connell] of his rights, privileges and immunities secured by the Constitution and laws of the State of New Jersey, and are liable to [O'Connell] pursuant to Article I, paragraphs 1 and 5 of the Constitution of the United States." (App. 51.)

Amended Complaint that he was "presently residing in Arlington, Virginia."[3] (App.

365.)

On November 26, 2012, the District Court *sua sponte* directed the parties to clarify whether it had subject matter jurisdiction over O'Connell's claims. The NJTA maintained that the District Court had subject matter jurisdiction because the Amended Complaint raised a federal question, but also argued for the first time that O'Connell was a citizen of Virginia, and therefore, the District Court had subject matter jurisdiction under 28 U.S.C. § 1332 due to the diversity of the citizenship of the parties. In response, O'Connell argued that his Amended Complaint did not raise a federal question and that there was no diversity of citizenship because he and the NJTA were both citizens of New Jersey.

The District Court did not issue a formal ruling on the subject matter jurisdiction issue at that time, and the case proceeded through discovery. Thereafter, the NJTA filed a motion for summary judgment. On April 7, 2015, the District Court granted summary judgment in favor of the NJTA on O'Connell's harassment claims, concluding that O'Connell failed to produce evidence sufficient to sustain a prima facie claim of harassment under the NJLAD or the New Jersey Constitution.[4] Prior to addressing the

---

[3] It appears that the mistake occurred because the preamble and other portions of O'Connell's state court Complaint, which O'Connell filed while residing in Virginia, were copied and pasted into O'Connell's Amended Complaint.

[4] The District Court previously dismissed the Negligent Infliction of Emotional Distress claim by stipulation of the parties.

4

substantive merits of the claims, the District Court concluded it had subject matter jurisdiction under 28 U.S.C. § 1332, explaining:

> [T]he preamble to Plaintiff's Amended Complaint states that he is a resident of Virginia, Defendant NJTA is a resident of the State of New Jersey, and the amount in controversy exceeds $75,000. Plaintiff cites no law showing why the Court should disregard the stated place of residence in the Amended Complaint.

(App. 2 n.1) (internal citations omitted). O'Connell timely filed this appeal.

Although the Brief for Appellant did not contest the District Court's determination that it had subject matter jurisdiction under the diversity statute, we directed the parties to address this threshold question consistent with our paramount obligation to assure that limited federal court subject matter jurisdiction exists in every case. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003). As explained in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), "[s]ubject-matter limitations on federal jurisdiction serve institutional interests. They keep the federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative. . . ." Having closely examined the question of subject matter jurisdiction, we conclude that the District Court acted in the absence of its limited jurisdiction and we must vacate its ruling.

II.

We have appellate jurisdiction to review a final order of the District Court under 28 U.S.C. § 1291. "In reviewing a district court's conclusion regarding where a party is domiciled, our review is for clear error as to the court's factual determination but *de novo*

5

as to the applicable legal principles and the court's conclusions of law." *Washington v. Hovensa LLC*, 652 F.3d 340, 341 (3d Cir. 2011).

III.

A District Court has subject matter jurisdiction under 28 U.S.C. § 1332 if the matter in controversy exceeds $75,000 and the parties are "citizens of different States." 28 U.S.C. § 1332(a)(1). "Citizenship is synonymous with domicile, and 'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). Several factors guide our determination of an individual's domicile, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Id.* (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)). Additionally, we may consider the "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id.* More generally, a person's domicile is "the center of one's business, domestic, social and civic life." *Washington*, 652 F.3d at 344 (quoting *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008)).

Once a person establishes a domicile, this "gives rise to a presumption favoring an established domicile over a new one." *McCann*, 458 F.3d at 286–87. In order for a person to change their domicile, two things are required: "[h]e must take up residence at the new domicile, and he must intend to remain there." *Id.* at 286 (quoting *Krasnov*, 465

6

F.2d at 1300). Moreover, under the "military servicemen principle," when a service member's residence changes as a result of military assignment, that person's domicile is presumed not to have changed unless there is "clear and unequivocal" evidence of an intention to change domicile. *Krasnov*, 465 F.2d at 1302 (citation omitted). This is because "the selection of a residence of a person subject to military orders is not a voluntary choice, but the product of compulsion." *Id*.

Prior to attending the Industrial College of the Armed Forces and moving to Virginia, O'Connell's domicile was New Jersey. He resided in South Amboy, New Jersey, worked in Woodbridge, New Jersey, served in the New Jersey Air National Guard, acted as a city councilman for South Amboy, New Jersey, and was a member of the New Jersey Bar Association. Clearly, New Jersey was "the center of [O'Connell's] business, domestic, social and civic life." *Washington*, 652 F.3d at 344 (quoting *Frett-Smith*, 511 F.3d at 401). Therefore, there is a presumption favoring New Jersey as O'Connell's domicile, and we will only find that O'Connell's domicile changed from New Jersey to Virginia if there is "clear and unequivocal" evidence that O'Connell intended to remain in Virginia after the completion of his military assignment. *Krasnov*, 465 F.2d at 1302 (citation omitted).

We find that the record is devoid of any such evidence. Instead, the record is unequivocal that O'Connell intended to return to New Jersey at the completion of his military assignment. On June 21, 2011, prior to the commencement of this lawsuit, O'Connell stated in a letter to the NJTA: "I have every intention of returning to the Authority once my Professional Military Education requirement is complete and the

7

National Guard Bureau releases me from active duty." (App. 361.) In his Amended Complaint, O'Connell likewise averred that he was still "an employee in good standing" with the NJTA and an active member of the New Jersey Air National Guard. (App. 366.) Later, O'Connell testified at his deposition: "I was not a resident of Arlington, Virginia. I was temporarily living there. My residence was still South Amboy, New Jersey." (App. 119.)

"The party asserting diversity jurisdiction bears the burden of proof." *McCann*, 458 F.3d at 286. The NJTA has not produced the requisite clear and unequivocal evidence that O'Connell intended to change his domicile to anywhere other than New Jersey.[5] Rather, the record is clear that when O'Connell was absent from New Jersey, he always intended to return. As such, the District Court erred in finding that O'Connell was a citizen of Virginia merely because his Amended Complaint stated that he was presently residing in Virginia. *See Emerald Inv'rs Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 207 n.24 (3d Cir. 2007) ("Domicile is what matters for the purposes of determining citizenship; residence is different."). Accordingly, we conclude that the

---

[5] In support of its contention that O'Connell intended to remain in Virginia, the NJTA notes that: (1) O'Connell's program was initially scheduled to end on June 11, 2011, but he remained in Virginia well into 2012; and (2) O'Connell updated his LinkedIn profile in May 2011 to reflect a new job title for a position that was located in Virginia. We find this proffer falls well short of "clear and unequivocal" evidence that O'Connell intended to remain in Virginia. First, the reason O'Connell remained in Virginia past his originally scheduled end date was because he underwent treatment for thyroid cancer that required two surgeries and delayed completion of his program at the Industrial College of the Armed Forces. Second, as O'Connell explained in his June 21, 2011 letter to the NJTA, the "new job title" in O'Connell's LinkedIn profile was "merely a vacant position at the school at which to 'park' [O'Connell]" until he recuperated from surgery. (App. 361.)

8

District Court lacked subject matter jurisdiction under 28 U.S.C. § 1332 because both

O'Connell and the NJTA are citizens of New Jersey.[6]

## IV.

For the foregoing reasons, we will vacate the District Court's order entered April

8, 2015, and direct the District Court to remand the matter to the New Jersey Superior

Court.

---

[6] Additionally, we conclude that the District Court did not have subject matter jurisdiction under 28 U.S.C. § 1331 because O'Connell's initial and Amended Complaint do not raise a federal question. The references to federal law are limited to citations in support of O'Connell's assertion that he was in the military and one stray reference to the United States Constitution. *See Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 310 (3d Cir. 1994) (holding that merely alluding to federal law does not raise a federal question); *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986) (holding that in order to present a federal question, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10–11 (1983))). Moreover, the references to O'Connell's pension merely support his NJLAD claim, and O'Connell does not seek to recover benefits under an ERISA-covered policy. *See Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1261 (3d Cir. 1996) (holding that plaintiff did not raise a federal question when he pled that he lost rights protected by ERISA because "he merely set forth the loss of his ERISA protected rights as a consequence of ETS's actions which allegedly violated [the NJLAD]."). Thus, there is no basis for federal question jurisdiction.